## KENIMER v. SENTER.

Circuit Court, Dade County.

April 20, 1948.

18

H. Reid DeJarnette, Dixon, DeJarnette & Bradford, Miami, for plaintiff.

David W. Dyer, Smathers, Thompson, Maxwell & Dyer, Miami, for defendant.

CHARLES A. CARROLL, Circuit Judge.

Naming as defendant his former wife, Mrs. Muriel Moran Senter, the plaintiff, Charles M. Kenimer, Jr., filed his bill of complaint in this court on February 10, 1948, seeking full custody of Betty Ann Kenimer, their 7-year-old daughter.

The bill alleged the plaintiff's local residence and defendant's Georgia residence; the presence of the child in this county; and the prior Georgia divorce decree which had vested custody in them jointly, and which provided that upon remarriage of either the custody should be determined by the court.

Plaintiff seeks full custody on two grounds set out in the bill, (1) that the former wife, at the time of the divorce, gave him a letter to the effect that she did not intend to marry one Wade Senter, and that if she should marry Senter the plaintiff could have custody of the child, and that later she married Senter, and (2) the charge that the defendant was not a proper person to have custody of the child because prior to the divorce she had had "an affair with the said Wade Senter."

On filing of the bill of complaint this court made an order granting temporary custody to the plaintiff, and enjoined the defendant from interfering.

The defendant was served by publication, and responded with an answer in which she denied that the plaintiff was a resident of Florida, admitted the allegations as to her residence, as to the presence of the child in Florida at this time, and as to the Georgia divorce. She admitted the letter above referred to, but averred it was obtained under duress, and she admitted she had married Wade Senter. She admitted that her mother and father had lived with the child in the plaintiff's home in Atlanta after she married Senter; denied the allegations that she intended kidnaping or removing the child from the jurisdiction of this court; and denied the portion of the bill charging her with having had an affair with Senter.

Defendant's answer incorporated a counterclaim, charging the plaintiff with being unfit to have custody of the child, alleging that he was an habitual drunkard; alleging instances of improper actions in the home stemming from his alleged intemperance; charging that he had a lack of real interest in rearing the child, and alleging the contrary as to herself. Based on that counterclaim, the defendant prayed for exclusive custody.

On trial of the matter this court heard the testimony of the plaintiff and of the defendant and her present husband Wade Senter, and also heard the testimony of the parents of each of the parties, and certain other witnesses produced before the court. In addition, depositions of 28 witnesses were filed in evidence. Briefs were submitted by counsel.

The question whether plaintiff is a resident of Florida was put in issue. The court finds he is a resident of Dade County. He moved from Atlanta to Miami, February 2, 1948. He has recently contracted for the sale of his Atlanta home. In Atlanta he owned two retail liquor stores and a half interest in a third, which he actively managed and operated. He has sold out a half interest in his liquor business, leaving the local management to others. He has relatives here with whom he is living. He shows intention to purchase a home here, and to go into business locally. Circumstances are consistent with his statement of intentions in the matter. There is little or no conflict in the evidence bearing on his residence or domicile in this state.

The court has jurisdiction to determine the status, including questions of custody, of the minor child of the parties. The Georgia divorce decree vested custody jointly in the parents. Under that decree the plaintiff, as well as the defendant, is entitled to custody. Being entitled to (joint) custody under that decree, and having the child with him in Florida, the child has her father's Florida domicile, conferring jurisdiction on this court. The defendant, who is equally entitled to custody under the Georgia decree, has appeared in this proceeding, and by counterclaim has sought a ruling of this court regarding custody of the child. Thus, both parties have resorted to this court for a determination as to custody of the child.

The parties were divorced by a decree of the superior court of Fulton County, Georgia, on September 18, 1947. The decree adopted and carried into effect the provisions of a settlement or agreement of the parties bearing the date of July 24, 1947, which was executed during the pendency of the divorce proceeding and in contemplation thereof. Based on that agreement, the provision of the Georgia court as to custody was as follows:

> It is further understood and agreed between the parties hereto that the custody of said minor daughter, Betty Ann Kenimer, shall be vested jointly in both parties hereto, defendant paying all bills for the support, maintenance and education of the said minor daughter, and in the event either or both of the parties hereto remarry, then it is agreeable that the court determine the custody of said minor daughter upon proper application of either party.

In the same agreement it was provided that for alimony the wife should receive $500, plus the privilege of living in the former home of the parties in Atlanta at the expense of

the plaintiff Kenimer. It was provided that if that home was sold Kenimer would furnish another similar home. Both parties proceeded to live in the Atlanta home after the divorce, which shows that the intent of the provision just referred to was that they were to live in the same house after the divorce, until one should remarry. That is also borne out by the fact that they did have joint custody of the child, a type of custody which could not exist unless they were living in the same place.

As the defendant has now remarried, and the joint custody which they contracted for is no longer possible, it is necessary that an order be made relating to custody. In addition, the agreement relating to custody directed that the matter should be submitted to a court for that purpose — in the event of a remarriage of either.

In this connection it is necessary that the court choose between the parties, and award the custody of this child to one or the other. The mother lives in Athens, Georgia, and the father, according to his representation to this court, now lives and intends to live in the future in Dade County, Florida. Divided custody, that is, custody which is equally or substantially equally divided between the parties as to time, is considered inappropriate, and would be against the best interests of the child because of interference with her schooling as well as for other considerations. Certainly the child's welfare requires that it be with one parent throughout the time of attendance at school and for such major part of the time as would give the child a feeling of having an established home or location.

Each party charges the other with unfitness. It is the holding of this court that neither of the parties is unfit as a parent to have custody of the child.

Plaintiff in his bill contends the defendant is unfit because she allegedly engaged in an affair with Wade Senter prior to the divorce. Suspicions are not facts. The evidence does not support the contention. It was shown that these parties and Senter and his then wife were close friends for more than a year prior to the divorce. An attraction developed between Mrs. Kenimer and Senter. Their attitude towards each other brought on squabbles between Kenimer and his wife, and between Kenimer and Senter. Days and even months at a time were put in by Kenimer in an effort to confirm his suspicions and catch them together in a clandestine meeting. He never

did. He hired detectives for the purpose. That brought in nothing tangible. Senter divorced his wife in June, 1947. Mrs. Kenimer filed her suit against Kenimer in July. Both she and Senter had at all times disclaimed any improper relations between them. They now say their intention to marry was not formed until a few days prior to October 27, 1947, the date of their marriage, which was more than a month after Mrs. Kenimer's divorce. Even if the parties had had an affair such as charged by the plaintiff, that of itself would not necessarily disqualify the defendant to have custody of the child — but the evidence fails to establish that such occurred.

It often happens that a woman married to one man becomes attracted to another. It is not unusual, in such circumstances, that where such woman has grounds for divorce a divorce is obtained and the parties so attracted to each other then marry. Human nature being what it is, those things happen. It would be a strange rule that would cause such an event to disqualify such a person to have custody of his or her children.

With respect to the fitness of the parties to have custody of the child the effect of the Georgia decree must not be overlooked. By vesting the custody jointly in the parties, the import of that decree was to find that *each* was fit to have the custody. Moreover, that finding by the court was in accordance with the views of the parties themselves — who entered into an agreement to share the custody jointly. It works both ways. As to the husband we do not inquire with respect to his fitness, into matters antedating the Georgia final decree. As to the wife, we do not inquire into matters as to her fitness antedating the Georgia decree, except as to her conduct with Senter, and that only because of the fact that she has now married and is living with Senter.

The many depositons taken and presented in this case were of no value or competence, except to the limited extent that they were aimed at showing misconduct between Mrs. Kenimer and Senter, before the divorce of the former. The effort, by those depositions, to show unfitness of the defendant here, by reciting indiscretions on her part which took place years before she married Kenimer, was not proper evidence here. Kenimer married her. Their child is hers, as well as his. If he felt he had grounds to have her declared unfit to raise her child, he took no action. She brought the divorce suit in Georgia, and was awarded the decree, with no filed objection by

him. He affirmed her fitness, by agreeing to a decree for joint custody. The same can be said of her testimony as to habitual intemperance over a period of years prior to the divorce. That evidence is incompetent here, for the same reason. While she did bring the suit for divorce, she agreed to his joint custody under the decree.

One reason relied on by the plaintiff as to why the defendant should not have custody of the child, is the letter which she gave him during the pendency of the divorce suit, to the effect that she had no intention to marry Senter and if she did marry him the plaintiff could have custody of the child. That feature is not properly a matter of fitness, but it ties in with the contention of unfitness because of her alleged prior conduct with Senter. While the authorities are not entirely in accord, it appears to this court to be the rule that a voluntary commitment by a parent to let the other parent have the custody of the child will not operate to deprive the former of a right to custody. The child is the ward of the court. The parent entitled to custody or entitled to claim custody cannot so estop himself or herself to the detriment of the interests of the child.

Moreover, let us look at this agreement or letter in the light of the circumstances in which it was made — and in the circumstances which have ensued. It was not a part of the main agreement which was filed in the divorce. It was *after* the execution of the agreement filed in the divorce suit acknowledging her fitness or right to custody or joint custody. The agreement filed in the divorce suit also contemplated that a later court order would be made fixing the custody as between the parties in the event of a later marriage by either of them. The plaintiff here must be held to have contemplated that, in the event of remarriage of one of them, the mother of the child might be chosen by the court to have its custody. Thus, there was no question of unfitness asserted as to the mother if she should remarry any one other than Senter, or whether or not she should remarry. The letter she wrote not only said that she did not intend to marry Senter, but said "as I have oftentimes told you I am not divorcing you to marry Wade Senter." The letter then went on in the form of a promise, that if she should ever marry Senter the father could have the custody. The letter was made at a time when, apparently, the wife had no intention of marrying Senter, but even so, the document was prepared at the husband's direction and insisted

upon by him. There was some conflict in the evidence as to the circumstances under which it was signed, but I find that there was no duress involved.

What happened between the time of that document and the time when the defendant married Senter appears consistent with the view that she had no intention of marrying him at the time she wrote the letter — and had no such intention until some time after her divorce was obtained. She continued to live in the same house with Kenimer, under trying circumstances. She said that as time went on she had no money, and all she had was the support he furnished her by providing a home and paying the bills. Under the peculiar agreement they had made in connection with the divorce, she had to live there with him in his home or she would lose her support. Meanwhile, Senter had moved to Athens, and he phoned her and saw her frequently after her divorce. It is not unreasonable that she should reach a determination to marry Senter or some one else to extricate herself from her predicament.

The contention was made before me that the mother had prejudiced her position by abandoning the child at the time she married Senter. I find that her actions did not amount to abandonment of the child. All she had was joint custody, and Kenimer also had joint custody. Even if she had been free to take the child with her, it would have been reasonable not to do so immediately upon remarrying. She left the child in the care of her parents, in their home until Kenimer should return to the city. When he did, he invited her parents to move into his home and care for the child, which they did. They lived with him there until he left Atlanta for Miami with the child and with his mother on February 2, 1948, without previous announcement of his plans.

Ten days after defendant married Senter, Kenimer had filed a proceeding similar to this, in the divorce cause in Georgia, seeking to enjoin her interference with his custody of the child and seeking exclusive custody. That matter was to be heard November 24, 1947, but it appears that the parties agreed to put the matter over until after Christmas in the interests of the child. No other hearing date appears to have been made, and Kenimer voluntarily dismissed that proceeding at the time of his departure from Atlanta on February 2, 1948. The proceeding here was filed six days after he arrived in this jurisdiction.

Turning now to the negative feature urged as to the fitness of the father, all that was shown in that connection, subsequent to the Georgia decree of divorce, was that he drank heavily and excessively until the time that he left Atlanta in February. Since then he has quit drinking almost entirely.

The wife's counterclaim sought to show his unfitness because of intemperance prior to divorce. Any questions as to that were settled in his favor by the Georgia decree. His intemperance after the divorce created a situation in his home which was not good for the child. While he did some excessive drinking in the home, and was within her observation a few times while intoxicated, those occasions were few. Nothing untoward occurred. The principal effect of his excessive drinking was that he saw very little of the child, sleeping until after the child was up and gone, and returning in the early hours of the morning. He was at home for the evening meal with the child only four times during the period of more than three months before he left for Miami.

Next there should be considered the positive aspects of fitness of the respective parties in their present circumstances, as the same might bear upon the question of custody of the child.

Every one involved seems to have sworn off liquor. There was plenty of evidence that every one concerned, the Kenimers and the Senters, drank to excess regularly. Each is definite that the others did. Each agrees equally that he or she was exempt from addiction.

The former Mrs. Kenimer, (Muriel) is a well groomed, attractive woman aged thirty-three. In her late teens or early twenties she had three previous excursions into marriage, each of which was annulled. She then married Kenimer as her fourth, and now Senter her fifth. The child involved is her only child. Senter, her present husband, has put in nine years as an employee of the National Cash Register Company. He was in the military service for a term prior to the war and again during the late war, after which he was in the wholesale liquor business for a year. He then returned to the employ of the National Cash Register Company. He is the manager of its sales office in Athens, Georgia, with a sales territory covering nine counties. At the time of his remarriage he pur-

chased a home in Athens, which he is in the process of buying, and where he and Muriel live. If he was a heavy drinker before, the evidence before me was that he had not had a drink since he obtained his divorce in June. Muriel likewise appears to have abstained since last fall. Nothing was produced to indicate that Muriel is not adequately situated to afford an appropriate home, and home life for the child, in Athens, Georgia. There is no evidence of any misconduct on her part subsequent to the divorce.

Muriel's interest in the child appears to have been normal and all that could be expected of her under the circumstances. From the time of the divorce in September until she remarried in October she lived with the child in Atlanta as before. Ten days before she married Senter her former husband brought the suit for sole custody in Atlanta, and from then until the time he took the child to Miami she visited with the child frequently, talked to her often by telephone, and was especially attentive to the child at Christmas time. In response to the proceeding which was brought here she employed able counsel and has earnestly asserted her position and her claim before this court. She and her present husband and her parents journeyed here and appeared before the court in support of her interest in this case.

Any consideration of the mother's present situation and circumstances must include the factor that she is now Senter's wife. This case presents the unusual feature that the father of the child does not consider the mother unfit, as such, to have custody of their child — but only because she is now wedded to Senter. From her own standpoint, a subsequent marriage to Senter did not render her unfit as a mother. The important thing here is that there is no showing that the fact that Senter is now the husband of the child's mother would operate against the welfare of the child, if with the mother, any more than any other new husband she might have chosen.

The personal feeling which the plaintiff has for or against Senter may account for his attitude, but can have no effect on the welfare of the child.

There was some evidence that Senter did not like children, and did not like this child. But there was also evidence to the contrary, including that of Senter before the court. The testimony as a whole, even going back to the time of the decree,

did no worse for Senter than it did for the others involved. Even the plaintiff's witnesses testified more to Senter's good character than contrary. Those for whom he worked and had worked especially stood up for him. The evidence must control, and the evidence failed to show that Senter was or is guilty of any conduct which would make his presence in his household a circumstance or condition operating to the detriment of the welfare of the child if living there in her mother's custody.

Looking at the affirmative aspects as to the father of the child, it is found that while he announces that he is in the market to obtain a home here he has not established one to date. He is residing in a home owned by his sister who obtained a divorce from her husband about a year ago and who is regularly employed in a real estate office. Mr. Kenimer's father is in the life insurance business in Atlanta. He expressed a desire to move to Miami himself but only after a year, or a year and a half, when his business will permit. Mr. Kenimer's mother, whose home is in Atlanta, is here, and has announced a willingness to stay here as long as Mr. Kenimer needs her. Currently she is looking after the child in its daily needs. Mr. Kenimer has another sister here living not a great distance from the home of the sister with whom he resides and who has four children, the ages of whom generally conform to the age of the child in question, and the child while here has the advantage of associating and playing with those cousins with whom she is quite congenial. This child has been placed in a good private school for girls, comparable to that which she attended in Atlanta.

This court does not recognize any paramount or primary right of a father rather than of a mother to have custody of a child. Any ancient common law rule to that effect has given way to a consideration of the parties on an equal basis as far as legal rights to the custody, and if either has a paramount right it is the mother in the case of a child of tender years, even where everything else is equal.

This child is not one of tender years in the sense that an infant in arms is so referred to, but a girl of seven years should be classed as a child of tender years. Unless there are considerations which serve to prevent it, a child of that age, and especially a girl, should have her mother's care, if the mother is a fit custodian.

Since one of the parties must have the custody at least 9 or 10 months of the year, the question is narrowed down to what will best promote the welfare of the child. In favor of an award of such custody to the mother there are the considerations that she is the child's mother, the relatively tender age of the child, the fact that it is a girl; that the mother lives within 75 miles of Atlanta, where the child has lived until a few months ago, and where her parents grew up and lived; that both sets of grandparents live in Atlanta, and are much interested in the child; and that the mother, at least at this time, has a home in Athens, which has not been shown to be other than an appropriately maintained house and household.

I repeat that the award of the custody is on the basis of what appears to be for the best interests and welfare of the child — the determination cannot be made to depend upon the feelings of the parties toward each other. I find that the court has jurisdiction of the subject matter and of the parties to this suit, and has jurisdiction to determine the status and custody of the child of the parties, Betty Ann Kenimer, aged 7; that the plaintiff is a resident of Florida and that the defendant resides in Georgia; that at present by virtue of a decree of divorce entered in Fulton County, Georgia, on September 18, 1947, the parties are jointly entitled to custody; that under said decree in the event of the remarriage of either party the question of custody as between them was to be determined "by the court" and such provision has become effective because of the remarriage of the defendant; that the present distance between the places of residence of the parties also requires a determination as to the custody of the child; and that the child involved in this case, a girl aged 7, is still a child of tender years.

It is the opinion of the court that the best interests of the child and her welfare prompt an award of her custody to her mother, with partial custody granted to the father for such period as will not affect the child's schooling. Plaintiff's claim for exclusive custody under his bill of complaint will therefore be denied. Defendant's claim for exclusive custody under her counterclaim will be granted to the extent set out below. The matter of the support of the child was determined by the Georgia divorce decree, and no question respecting the same was presented before me.

It is therefore ordered:

1. That the defendant, Muriel Moran Senter, be and she hereby is awarded custody of the child of the parties, Betty Ann Kenimer, her custody of the child to be exclusive subject only to part-time custody hereinbelow awarded to plaintiff.

2. That the plaintiff, Charles Kenimer, Jr., be and he hereby is awarded part-time custody of the child, his period of custody in each year to be for two months, which two months custody shall be during the summer school recess period and between the dates of June 1 and September 1, as he shall determine.

3. That each party shall have the right of reasonable visitation when the child is in the custody of the other.

4. In view of the fact that the child is now in school in Miami and an immediate transfer of custody would require that she be taken out of school with possible detriment to her schooling progress, the time when the defendant shall take custody as hereinabove granted to her is hereby fixed at June 1, 1948.

5. That notwithstanding the direction for transfer of custody to the defendant on June 1, 1948, the plaintiff shall be entitled to custody for two months during the summer period of 1948, as hereinabove provided, between June 1 and September 1, 1948, and in the event he elects to have such two months custody during the months of June and July then the defendant shall be entitled to custody as hereinabove provided beginning on August 1, 1948, or she may, if the plaintiff so desires, take custody of the child on June 1, returning custody to plaintiff for such a two-months period as he shall select between June 1 and September 1, 1948.

6. That the plaintiff, Charles M. Kenimer, Jr., his agents, servants and attorneys, be and they hereby are enjoined from removing or causing the removal of Betty Ann Kenimer from or out of the jurisdiction of this court or outside of the state of Florida prior to the time that the defendant shall take custody of the child as provided for in this decree, unless leave of court shall be granted therefor by order of this court on application.

7. That the costs in this cause are charged against the plaintiff.